DAVID L. ANDERSON (CABN 149604)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
SHARANYA MOHAN (NYRN 5027768)
Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California 94102-3495
    Telephone: (415) 436-7198
    Fax: (415) 436-6748
    sharanya.mohan@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PANGEA LEGAL SERVICES, | CASE NO. 20-cv-03619 RS |
|     Plaintiff, | STIPULATION OF SETTLEMENT AND DISMISSAL WITH PREJUDICE; ORDER |
| v. | |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | |
|     Defendant. | |

1    IT IS HEREBY STIPULATED by and between the undersigned Plaintiff and Defendant, by and
2 through their respective attorneys, as follows:
3    WHEREAS, on June 1, 2020, Plaintiff filed the above-captioned action under the Freedom of
4 Information Act ("FOIA"), 5 U.S.C. § 552;
5    WHEREAS, the parties wish to avoid any further litigation and controversy and to compromise
6 fully any and all claims and issues that have been raised, or could have been raised, under the FOIA in
7 this action;
8    WHEREAS, among other records, USCIS produced five pages consisting of a guidance
9 memorandum bearing Bates stamps USCIS-PLS-FOIA-00001 to 00005 (attached as Exhibit A hereto) in
10 response to the FOIA request at issue in this action;
11    WHEREAS, Defendant represents that the author of the guidance document attached as Exhibit
12 A is an adjudications officer within the Field Operations Directorate, Division 1, Adjustment of Status;
13    NOW, THEREFORE, in consideration of the mutual promises contained in this Stipulation, and
14 other good and valuable consideration, receipt of which is hereby acknowledged, the parties stipulate as
15 follows:
16    1.    Defendant shall pay $12,500 (twelve thousand five hundred dollars and zero cents) to
17 Plaintiff in full and complete satisfaction of Plaintiff's claims for attorneys' fees, costs, and litigation
18 expenses under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, in the above-
19 captioned matter. This payment shall constitute full and final satisfaction of any and all of Plaintiff's
20 claims for attorneys' fees, costs, and litigation expenses in the above-captioned matter, and is inclusive
21 of any interest. Payment of this money will be made by electronic funds transfer or check promptly after
22 notification of the Court's entry of this Stipulation and after receipt of necessary information from
23 Plaintiff to effectuate the payment. Defendant will make all reasonable efforts to make payment within
24 forty-five (45) days of the date that Plaintiff's counsel provides the necessary information for the
25 electronic funds transfer and this Stipulation is approved by the Court, whichever is later, but cannot
26 guarantee payment within that time frame.
27    2.    Upon the execution of this Stipulation, Plaintiff, having received the records it requested,
28 hereby releases and forever discharges Defendant, its successors, the United States of America, and any

STIPULATION OF SETTLEMENT AND DISMISSAL WITH PREJUDICE; [PROPOSED] ORDER
20-cv-03619 RS

department, agency, or establishment of the United States, and any officers, employees, agents, successors, or assigns of such department, agency, or establishment, from any and all claims and causes of action that Plaintiff asserted or could have asserted in this litigation with respect to the specific FOIA request on which this action is based, or which hereafter could be asserted by reason of, or with respect to, or which arise out of, the specific FOIA request on which this action is based, including but not limited to all past, present, or future claims for attorneys' fees, costs, or litigation expenses in connection with the above-captioned litigation.

3. The provisions of California Civil Code Section 1542 are set forth below:

"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Plaintiff having been apprised of the statutory language of Civil Code Section 1542 by Plaintiff's attorney, and fully understanding the same, nevertheless elects to waive the benefits of any and all rights Plaintiff may have pursuant to the provision of that statute and any similar provision of federal law. Plaintiff understands that, if the facts concerning any injuries, liability for damages pertaining thereto, or liability for attorneys' fees, costs or litigation expenses are found hereafter to be other than or different than the facts now believed by it to be true, this Stipulation shall be and remain effective notwithstanding such material difference.

4. Execution of this Stipulation and its approval by the Court shall constitute dismissal of this case with prejudice pursuant to Fed. R. Civ. P. 41(a).

5. The parties acknowledge that this Stipulation is entered into solely for the purpose of settling and compromising Plaintiff's claim to attorneys' fees, costs, or other litigation expenses without further litigation, and it shall not be construed as evidence or as an admission on the part of Defendant, the United States, its agents, servants, or employees regarding any issue of law or fact, or regarding the truth or validity of any allegation or claim raised in this action, or as evidence or as an admission by the Defendant regarding Plaintiff's entitlement to attorneys' fees, costs, or other litigation expenses under FOIA.  Nor will this Stipulation be construed as an admission on the part of Plaintiff or their counsel regarding any issue of law or fact, or regarding the truth or validity of any defense raised in this action,

or as evidence or as an admission by the Plaintiff regarding attorneys' fees, costs, or other litigation expenses under FOIA. This Stipulation shall not be used in any manner to establish liability for fees or costs in any other case or proceeding involving Defendant or as a defense to fees or costs in any other case or proceeding.

6. This Stipulation is binding upon and inures to the benefit of the parties hereto and their respective successors and assigns.

7. If any provision of this Stipulation shall be held invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

8. This Stipulation shall constitute the entire agreement between the parties, and it is expressly understood and agreed that this Stipulation has been freely and voluntarily entered into by the parties hereto. The parties further acknowledge that no warranties or representations have been made on any subject other than as set forth in this Stipulation.

9. The persons signing this Stipulation warrant and represent that they possess full authority to bind the persons on whose behalf they are signing to the terms of the Stipulation.

10. This Stipulation may not be altered, modified or otherwise changed in any respect except in writing, duly executed by all of the parties or their authorized representatives.

11. It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

IT IS SO STIPULATED.

**CERTIFICATION**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests under penalty of perjury that counsel for Plaintiff has concurred in the filing of this document.

| | |
|---|---|
| Dated: January 19, 2021 | Respectfully submitted,<br><br>DAVID L. ANDERSON<br>United States Attorney<br><br>*/s/ Sharanya Mohan*<br>SHARANYA MOHAN<br>Assistant United States Attorney<br>Attorney for Defendant |
| DATED: January 19, 2021 | */s/ Trina Realmuto*<br>TRINA REALMUTO<br>Attorney for Plaintiff<br><br>*/s/ Marie Vincent*<br>MARIE VINCENT<br>Attorney for Plaintiff<br><br>*/s/ Etan Newman*<br>ETAN NEWMAN<br>Attorney for Plaintiff |

**IT IS SO ORDERED.**

DATED: January 19, 2021

_____
HONORABLE RICHARD SEEBORG
United States District Judge

STIPULATION OF SETTLEMENT AND DISMISSAL WITH PREJUDICE; [PROPOSED] ORDER
20-cv-03619 RS

# Exhibit A

March 2019 (updated: December 2019)

## I-730 Guidance & Updates for the Regions

1. **When and how should offices send Follow-to-Join Refugee (FTJ-R) I-730s to the RAIO International Adjudication Support Branch (IASB)?**

   **\*Note: The Los Angeles Asylum Office (ZLA) is now performing all duties previously handled by the RAIO IASB. The instructions below have been updated to reflect this change.**

   - All FTJ-Rs are sent to RAIO/ZLA by SCOPS for pre-processing before interview and adjudication by a field office. RAIO/ZLA conducts additional security checks for all I-730 FTJ-Rs. For specific populations, they initiate Enhanced FDNS Review (EFR).
   - RAIO/ZLA places a <u>pre-processing worksheet</u> and a <u>security checklist</u> in each file to document any actions taken, so it will be clear when RAIO/ZLA has already processed the file. The RAILS history will also indicate whether a file has been reviewed by RAIO/ZLA.
   - Although it should be an infrequent occurrence, if a field office receives an FTJ-R that doesn't look like it's been pre-processed by RAIO/ZLA, the field office must transfer the case to RAIO/ZLA before interview. The procedure for transferring a case is below:

   <u>Instructions for Relocating I-730 FTJ-R A-files:</u>

   1. A <u>cover sheet</u> should be completed for each beneficiary's file that lists the A# and lists any riding files. The <u>cover sheet</u> should also clearly indicate which field office the files should be returned to after RAIO/ZLA finishes their pre-processing.

      **Note**: Only Follow-to-Join Refugee (FTJ-R) I-730s should be transferred to RAIO/ZLA, and only if they have not yet been pre-processed by RAIO/ZLA. Follow-to-Join Asylee (FTJ-A) I-730s should never be transferred to RAIO/ZLA.

   2. Field offices should ship the cases (including any A-files that are riding with the beneficiary's A-file) in the following manner:

      - Prepare a manifest listing all files (receipt files, T-files, A-files, etc.) to be sent to RAIO/ZLA.
      - Send all files in RAILS to the Los Angeles Asylum Office. The Los Angeles Asylum Office's FCO is **ZLA**.
      - Place a copy of the manifest in the boxes.
      - Send files to RAIO/ZLA via UPS or other contract carrier to the Los Angeles Asylum Office's physical address:

USCIS-PLS-FOIA-00001

USCIS – Los Angeles Asylum Office
c/o I-730s
14101 Myford Road
Tustin, CA 92780-7020

- Notify RAIO/ZLA via email when the files are shipped:
    - Attach a copy of the manifest and tracking number.
    - Email: ▭ (b)(6)
    - Copy the following addresses:
        - 
        - 
        - 
        - 
        - 

3. RAIO/ZLA will receive the files by taking the following action:
    - Reply to the sender that the shipment was received.
    - Update RAILS by batch transferring in all files.
    - Notify the sender of discrepancies between the cases listed in the manifest and the actual cases received, if applicable.

2. How should offices handle "split family packs"?

In recent instances a "family pack" of I-730 cases have been sent to the field for interview (usually a spouse and child) when only one beneficiary was present in the U.S., while the other was still overseas. This is referred to as a "split family pack". In a few instances, both I-730s were approved even though only the beneficiary present in the U.S. appeared for an interview.

- SCOPS has informed FOD that they keep family packs together and bundle them together, even if one beneficiary is in the U.S. and the other is overseas. Please be aware that even if an office receives an I-730, the beneficiary may not be in the U.S. When scheduling I-730s, check the cases when they arrive to your office to make sure that all of the beneficiaries are present in the U.S. If one of them is not present, schedule the one that is in the U.S. for an interview and keep the other I-730 with it.
- If a field office receives a split family pack (one in which some beneficiaries reside in the U.S. and some reside outside of the U.S.), after interview and adjudication for beneficiaries present in the U.S., return all I-730 petitions in the split family pack back to the office that shipped them to the field office.
- To reiterate – every I-730 requires an in-person interview, even minor children. FOD can never adjudicate an I-730 without seeing the beneficiary in-person. An interview must always be conducted. If any question arises concerning whether a specific I-730 should be adjudicated by a domestic field office, please contact the FOD Division 1 mailbox (FODDivision1).

3. How should offices handle NCTC check re-requests?

One of the checks that RAIO/ZLA (formerly the IASB) conducts on FTJ-R cases is an NCTC check. These checks are valid for six months so the checks will likely still be valid when a final decision

USCIS-PLS-FOIA-00002

is rendered on an I-730 by a field office. If for any reason the check is expired and a new one is needed, email HQ FOD at FODDivision1 to request an NCTC check. This occurrence should be rare. Please note that Follow-to-Join Asylum (FTJ-A) cases **do no**t need an NCTC check, only FTJ-Rs.

4. **How should offices treat cases with pending I-589s?**
   This is a fairly common scenario. The fact that there is a pending I-589 does not impact the adjudication of the I-730. For an I-730 beneficiary, the moment of qualification as a refugee/asylee in their own right happens once they are granted refugee/asylee status. Therefore, a field office can approve I-730 beneficiaries who meet all of the eligibility requirements, even if they have a pending asylum case. If an officer encounters an I-730 case with a pending I-589, the officer should conduct the I-730 interview as they normally would. The merits of the individual's asylum claim do not need to be explored and there is no need to wait for a decision on the pending I-589 before rendering a decision on the I-730.

   *Note*: An applicant should never be asked or required to withdraw their I-589 either before or after they are granted as an I-730 beneficiary. FOD HQ is working with the Asylum Division to determine whether notification procedures are needed for when an I-730 beneficiary with a pending I-589 is approved.

5. **How should offices get beneficiary signatures on the I-730 if they did not obtain it at the interview?**
   If the beneficiary did not sign the I-730 at interview, offices should follow their existing local call-back procedures to have the beneficiary return to the office for signature.

6. **How should offices call beneficiaries to interviews in locations that differ from the location of the petitioner?**
   USCIS can and does transfer files to new interview locations upon identification of the need. When an office receives a request to transfer a file from the beneficiary (based on the residence of the beneficiary), offices should provide a courtesy copy of the new interview notice to notify the petitioner that the beneficiary's file is being transferred at the beneficiary's request.

7. **How should field offices handle I-730 cases in which the beneficiary has a removal order that is eligible for reinstatement, but has not yet been reinstated?**
   An officer may discover through systems checks/file review/testimony that an alien was already removed and has re-entered without inspection and is thus eligible for reinstatement of the prior removal order, or that an I-871, Notice of Intent/Decision to Reinstate Prior Order, is in the file but has not been signed by ICE.

   An alien who illegally re-entered the U.S. after having been removed, or having departed voluntarily while under an order of exclusion, deportation, or removal from the U.S., is subject to reinstatement of removal. See INA 241(a)(5); 8 CFR 241.8. USCIS does not have the authority

to reinstate prior orders of removal. When these cases are encountered, USCIS must refer these cases to Immigration and Customs Enforcement and Removal Operations (ICE ERO), which completes and effectuates service of the Form I-871.

In instances where a prior removal order is eligible for reinstatement and/or there is an unsigned I-871 in the A-file, officers should follow the guidance below to ensure consistency throughout the Regions and with other parts of the agency:

> If the field office determines that the beneficiary *may be* subject to the reinstatement of a prior removal order, the field office should request the ICE ERO office with jurisdiction over the applicant's place of residence to determine whether ICE ERO will reinstate the prior removal order. Initially, the processing of the I-730 petition will be halted for 30 days until the local ICE ERO office decides whether they will reinstate the prior removal order. ICE ERO should be contacted every 30 days until a decision is made. If ICE ERO does not make a decision on whether to reinstate the prior removal order within 90 days, the field office should contact FOD Division 1 for further assistance (FODDivision1).

> If ICE ERO decides not to reinstate the prior removal order, officers should place a memo in the file, noting that ICE ERO did not want to reinstate on XX date and proceed with routine adjudication on the merits of the case. Offices should include all relevant correspondence with ICE ERO in the A-file.

In instances where the beneficiary of a Form I-730 is subject to reinstatement of the prior order of removal and ICE ERO has signed and served Form I-871, USCIS must deny the Form I-730.

*General note*: While this guidance focuses on how to address *beneficiaries* with prior orders of removal, USCIS may see instances when it is found that the *petitioner* has a prior order of removal. Field offices should consult with their local OCC and ICE OPLA to determine the appropriate processing steps on a case-by-case basis in these instances.

8. **Where an I-871 has been signed and served on the beneficiary of an I-730, and where the beneficiary has been removed as a result of the execution of the reinstatement of their removal order but has subsequently re-entered without inspection, must a new I-871 be signed and served on the beneficiary of the I-730, or should field offices deny the I-730 without a new I-871 in the file?**
A reinstated removal order is still a removal order. The office should reach out to ICE ERO to determine if they would reinstate the prior (previously reinstated) order. If ICE ERO signs and serves a new I-871 to the beneficiary, the I-730 petition can be denied. If the order is not re-instated (again), the I-730 petition can be adjudicated on its merits.

9. **If an I-871 has been signed and served on the beneficiary of an I-730, but the beneficiary has subsequently received withholding of removal or CAT from an IJ, but was not granted asylum, what impact does that have on our adjudication of the I-730? Should field offices deny the I-730 in such instances?**
Under INA §§ 241(a)(5) and (3)(a), as well as 8 CFR § 241.8(e), an individual whose prior removal order was reinstated may be screened for a reasonable fear of persecution or torture. While this

may lead to a grant of withholding or deferral of removal, neither asylee nor refugee status is available to an individual with a reinstated removal order. Therefore, a beneficiary of a pending I-730 petition is limited in the forms of protection they may seek. *See e.g., Padilla v. Ashcroft*, 334 F.3d 921, 925 (9th Cir. 2003); and *Herrera-Molina v. Holder*, 597 F.3d 128, 139 (2d Cir. 2010). Accordingly, a NOID should be issued citing the reinstated removal order/Form I-871 of the beneficiary and that derivative asylum cannot be conferred by an I-730 petition when INA § 241(a)(5) governed the removal order.

10. **How do we address beneficiary bars or inadmissibility in denial notices if those bars were disclosed on the beneficiary's own pending I-589, where a denial notice is sent to the petitioner and the attorney? Does disclosure of those bars violate confidentiality provisions? How do we draft legally sufficient denials in such cases?**
    Before addressing beneficiary bars in a denial, field offices must seek a confidentiality release from the beneficiary in advance of issuing the denial. Field offices should work with local OCC to draft such a release. If a release is not granted, a field office may not disclose information about the bars or inadmissibilities in a denial. Field offices should contact local OCC or FODDivision1 mailbox for further assistance.

11. **New I-730 training resources**
    There are training resources available on the FOD Division 1 Resource Library, including recordings of the most recent training.

USCIS-PLS-FOIA-00005